IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
                          D. G. SWEIGERT

                     Plaintiff,

      -against-

                JASON GOODMAN
                    Defendant.
--------------------------------------------------------------------X

Case 1:23-cv-05875-JGK
Case 1:23-cv-06881-JGK

**AFFIDAVIT OF
JASON GOODMAN**

I, Jason Goodman hereby affirm as follows:

1.      I am over eighteen (18) years of age. I have never been convicted of a felony or any crime involving moral turpitude.  I am competent to testify to the matters stated herein.

2.      I have personal knowledge of each, and every statement made in this Affidavit and such statements are true and correct.

3.      I make and submit this Affidavit in connection with the Motion for Rule 11 Sanctions originally presented to Plaintiff on October 16, 2023, pursuant to FRCP Rule 11(c)(2).

4.      This submission is not frivolous, it is not made in bad faith, and it is not made for any improper or ulterior purpose.

5.      This filing complies with FRCP Rules, and this Court's Local Rules.

6.      This filing is made in good faith and for the reasons stated in the is accompanying memorandum in support pursuant to FRCP Rule 11(b)(1), (2), (3) and (4).

7.      I am a documentary filmmaker, journalist, talk show host and founder of the social media brand Crowdsource the Truth.

8.      I first became aware of Plaintiff David George Sweigert ("Sweigert") in or around May 2017 after I interviewed his brother George Webb Sweigert ("Webb") on my talk show.

9.      I have never met Sweigert and have no need or desire to interact with him except for the nearly two dozen frivolous lawsuits he has initiated or agitated against me since 2017.

10.     On June 14, 2017, Webb called in to my talk show to report an unsubstantiated story that resulted in the closure of the Port of Charleston and made national news headlines. (https://www.nytimes.com/2017/06/15/us/port-dirty-bomb-south-carolina.html)

11.     Since that day, and concurrent with a continuous, persistent, and ongoing cyberstalking and harassment campaign, plaintiff Sweigert has been fixated on me obsessively. He goes to extraordinary lengths to disrupt every aspect of my professional and personal life.

12.     After six and a half years, I have become convinced that Sweigert's goal is to maintain a constant stream of multiple simultaneous legal actions against me, with no regard for the success of any particular action. This belief is supported by the fact that he voluntarily withdrew Sweigert v Goodman for no given reason after more than three years, just as the case was set to go to trial. (*See* Case 1:18-cv-08653-VEC-SDA Document 381)

13.     The belief that Sweigert doesn't care about the outcome of this instant case is also supported by Sweigert's most recent filing of a Motion to Dismiss Social Media Defendants Twitter/XCorp and Google/Alphabet. Sweigert improperly added these defendants solely so he could apply outsized pressure on them through this instant legal action in order to coerce them into enforcing content moderation policies that they otherwise would not have enforced.

14.     I believe Sweigert included the social media defendants knowing he could not make a claim against them upon which this Court could grant relief because he already knows 47 U.S.C § 230 indemnifies third parties including Social Media Defendants from such claims.

AFFIDAVIT OF JASON GOODMAN                                                        2

15.    On or around October 24, 2023, without prior warning or any previous infraction, Alphabet/Google terminated multiple YouTube accounts that Sweigert knows I rely upon to conduct business and that Sweigert has publicly sworn to destroy.

16.    Sweigert's motion to dismiss social media defendants, filed November 7, 2023, is further evidence that he does not have a legitimate injury to cure in this case, but rather that he merely intends to use it as leverage to achieve his ulterior purpose of destroying my social media channels without even obtaining judgement from the Court.  Sweigert's manipulation of this process undermines the Court's inherent authority and cannot be allowed.

17.    Plaintiff's previous withdrawal of Swigert v Goodman (*See* Case 1:18-cv-08653-VEC-SDA Dkt. No. 381) was not prompted by settlement, resolution of any claims in dispute, or any other outside influence.  Sweigert has provided no reason for the voluntary withdrawal and even filed a motion for reconsideration to challenge the final order after his frivolous claims were dismissed with prejudice, (*See* Case 1:18-cv-08653-VEC-SDA Dkt. No. 383).

18.    In response, Judge Caproni issued a toothless admonishment including a warning against future "judicial gamesmanship" in her order denying reconsideration, but fell short of enjoining Sweigert from any future, similarly destructive, malicious behavior as she should have.

19.    Despite this hollow warning, Sweigert has shown no signs of curtailing his "judicial gamesmanship" also known as Lawfare as described by retired U.S. Airforce Colonel Charles Dunlap Jr.  If anything, Sweigert's efforts have intensified since the feckless warning.

20.    The Second Circuit has found, sua sponte dismissal with prejudice can be an appropriate sanction when an articulate and sophisticated pro se litigant is found to be abusing the process and has been warned but fails to heed prior warnings. "The severe sanction of dismissal with prejudice may be imposed even against a [pro se] plaintiff . . . so long as a

warning has been given that noncompliance can result in dismissal." *Valentine v. Museum of Mod. Art*, 29 F.3d 47, 50 (2d Cir. 1994)

21.    Judge Caproni's inaction has allowed Sweigert to run roughshod over multiple U.S. District Courts with his sham litigation including the Eastern District of Michigan, the Southern District of New York, the Eastern District of Virginia, and other jurisdictions.

22.    Sweigert has publicly stated his intention to sue me for the rest of his life and the thousands of pages of pleadings already filed with the Court over the last six and half years demonstrate his dedication to this maniacal obsession.  He will not stop unless he is enjoined.

23.    In addition to bringing a multitude of vexatious lawsuits expressly for the purpose of harassing me, monopolizing my time, and damaging me financially, Sweigert cyber stalks me on social media and seeks every opportunity he can muster to interfere in my life in any way can.

24.    In a case filed September 2020, which I allege was fomented by Sweigert, he cyberstalked and harassed my attorney with the deliberate intention of forcing his withdrawal, which ultimately did occur.  (*See* Case 1:20-cv-07269-VEC-OTW Document 102-2)

25.    Under duress, I was compelled to grant withdrawal.  My attorney cited Sweigert's harassment as his sole motivation, going as far as saying, "Since the time Mr. Sweigert posted a photo of my child, I have made inquiries and formed the opinion that Mr. Sweigert (and others who share antipathy toward Mr. Goodman) are not people I want to fight with.  I cannot determine what motivates them, but I have no reason to assume they are harmless".

26.    It is implausible to consider that a U.S. District Court judge might construe antagonization of an attorney's three-year-old infant child as legitimate litigation strategy, yet Valerie Caproni made no comment about it and took no meaningful action whatsoever against Sweigert in response to the forced withdrawal of the attorney and his stunning testimony.

27.     After I successfully defended myself against several of his early sham lawsuits, I allege Sweigert devised a new tactic designed to compel me to hire an attorney.  He has already demonstrated his tried-and-true plan to subject any retained attorney to persistent antagonization through cyber stalking and harassment with the deliberate intention of provoking withdrawal.

28.     The deception that enabled Sweigert's corrupt scheme involved manipulating the name of an inactive New York Corporation that I used to own, Multimedia System Design, Inc. ("MSD").  Sweigert created a fictitious entity that he persistently attempts to link to my current activity under the brand name "Crowdsource the Truth".  Sweigert's made up a fictional entity he titled "Multimedia System Design, INC D/B/A/ Crowdsource the Truth" ("MSDI") in order to resemble properties and brand names associated with me and my current work and to deceive the courts.  This imaginary corporate entity was invented solely by Sweigert.  MSDI is not a real entity, and it plays no role in any activity that gave rise to any allegations in his complaint.

29.     No other entity has any ownership of, or liability for, any social media, audio or video content or other intellectual property or other creative content that I post on the internet.

30.     As a corporate legal entity, the real, inactive corporation I used to own, MSD, is separate and apart from the natural person "Jason Goodman" a distinct and unique legal entity.

31.     Both the natural person Jason Goodman, and any corporation active or inactive, fictitious, or real, would be considered "providers" or "users" of interactive computer services and information or content on the internet pursuant to 47 U.S.C § 230.

32.      47 U.S.C § 230(c)(1) prohibits action against one legal entity for something published on the internet by another, "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  Plaintiff Sweigert and Judge Caproni have both wrongfully ignored this.

33.    This instant matter consolidated Sweigert's most recent vexatious action against the fake MSDI in the Eastern District of Michigan.  I have never lived in Michigan.  No company I have ever owned has ever had a place of business or specific interests in Michigan.

34.    Sweigert would have failed to serve either MSD or MSDI at my home address because the residential apartment building that I live in is not an office or place of business, and neither corporate entity that has ever had offices here or is known to the residential building staff.

35.    Sweigert would have failed the serve MSDI at any of MSD's previous legitimate office locations because operations terminated in 2013.  The corporation remained registered and in good standing with the New York Secretary of State, but it was dormant and not operative.

36.    Sweigert is aware of these facts but has chosen to sue the false entity in a state he knows it does not operate or exist in, solely and exclusively to perpetuate his fraudulent scheme, to deceive the Court and to compel me to hire counsel so he might provoke withdrawal again.

37.    In this case, Sweigert is attempting to deceive the Court by conflating the defunct, years old, inactive MSD with my current personal work that he knows is unrelated.  This deception is calculated exclusively to subject me to the financial burden of retaining counsel for a fictional corporate entity maliciously created by Sweigert.  There is no legitimate purpose or alternate reason for this.  Sweigert has repeatedly reiterated his specific intent via harassing persistent email communications, sent nearly daily, compelling me to retain counsel.

38.    Even if the Court determines the non-entity brand name Sweigert has deliberately associated with a false corporate entity to be a valid defendant, and even if the Court determines I am somehow the owner of the false entity, any such imagined corporate entity does not own, license, or have liability for intellectual property created by the natural person Jason Goodman.

39.     No other party aside from me can claim ownership of, or share liability for, any intellectual property created by me without some licensing or assignment agreement between the two entitles.  No such agreement exists or has ever existed.  Sweigert will fail to prove otherwise.

40.     All intellectual property created by me is my sole, exclusive property with the exception of any instance in which a licensing, sale or assignment agreement exists with another party.  No such licensing or any other agreement exists or has ever existed between me and MSD, the fictional MSDI or any other corporation with regard to assignment of rights, ownership or liability associated with intellectual property referenced in or relevant to this case.

41.     MSD has no ownership of or liability for any of the intellectual property that has given rise to the controversy in this matter.  All video, audio and written or spoken content attributed to me as referenced in Sweigert's complaint is my sole responsibility.

42.     While operational, MSD sought and obtained two assumed names from the New York Secretary of State.  DBA Multimedia Software Design, and DBA 21st Century 3D.

43.     The assumed name "DBA Crowdsource the Truth" has ever been sought nor granted, it is a fiction invented by Sweigert as a component of his scheme to deceive the Court.

44.     To my knowledge, only a corporation can apply for an assumed name and receive a DBA from the New York Secretary of State.  Natural persons cannot do so as far as I am aware.

45.     Even if, natural persons may apply for assumed names, I have never applied for an assumed name, nor have I received any DBA from the New York Secretary of State in relation to my own name "Jason Goodman" or as the legal entity and natural person Jason Goodman.

46.     Jason Goodman DBA Crowdsource the Truth is not a real corporate or other legal entity to my knowledge and so I presume this refers to me, the natural person Jason Goodman.

47.     Jason Goodman DBA 21st Century 3D is not an actual corporate or other legal entity to my knowledge and so I presume this refers to me, the natural person Jason Goodman.

48.     The caption in this case should reflect that the natural person Jason Goodman is the one and only valid defendant in this action.  Sweigert should be enjoined from filing actions against entities he knows to be invalid, or any other entity owned by, formerly owned by, or directly related to Goodman or Goodman's business associates.

49.     Sweigert would be unable to serve MSDI at my home address because it is a fictional entity that does not exist outside of Sweigert's deluded mind and misguided litigation.

50.     Sweigert would be unable to MSD at my home address because it is an inactive New York Corporation that previously existed initially at an office location at 928 Broadway, for a time at 3450 Cahuenga Blvd in Los Angeles, and then until 2013 at an office location at 505 8th Avenue.  All offices had been permanently closed by the end 2013 and none have reopened.

51.     Most employees at my residential apartment were not even employed there in 2013 and are familiar with the defunct corporate entity Sweigert is desperate to sue.

52.     The truth of these matters explains why Sweigert was unable to effectuate proper service in Case 1:23-cv-06881 and further proves the bad faith with which he proceeds.

53.     In granting Plaintiff's request for consolidation, the Court referred to 23-cv-06881 as "Sweigert v Goodman" correctly indicating that any reference to MSD, MSDI or other pseudo corporate defendants should not appear in captions related to this or any other matter.

54.     Because Sweigert has deliberately and repeatedly filed vexatious lawsuits against false and fictious, non-existent corporate entities and because he does this with the intent to harass, delay and increase the scope and cost of litigation, I have submitted a motion to sanction him pursuant to FRCP Rule 11 and hope the Court will enjoin him from further abusive activity.

55.    Rule 11 is specifically intended to block the precise style of abusive litigation that is Sweigert's obsessive fixation.  The Court must enjoin him from continuing this behavior.

56.    On October 31, 2023, I filed a case against the City of New York and the New York City Police Dept. (*See* Goodman v City of New York et al, Case 1:23-cv-09648).

57.    Sweigert is not a party to the case, nor was he a witness or even present in New York to my knowledge at the time of the alleged assault that gave rise to that case.  Despite these facts, Sweigert has persistently interfered in the matter and on November 6, 2023, began making filings in the case. **(EXHIBIT A)**

58.    Sweigert is intent on perpetually and repeatedly denying my rights to access the first amendment and the courts and he is wasting judicial resources with impurity while doing it.

59.    Sweigert must be sanctioned for having engaged in this willful, malicious conduct and enjoined from engaging in any further such activity, as well as any other sanctions as determined by the Court.  Absent sufficiently strong sanctions, there is no reason to believe Sweigert would not continue his obsessive, maniacal, vindictive abuse of Goodman and the Courts indefinitely.  Sweigert must be permanently and substantially sanctioned and enjoined.


Dated: New York, New York November 7, 2023

Respectfully submitted,

Jason Goodman
Pro Se Defendant
truth@crowdsourcethetruth.org
252 7th Avenue Apt 6s
New York, NY 10001
347-380-6998


AFFIDAVIT OF JASON GOODMAN                                                          9

**EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JASON GOODMAN**<br><br>**Plaintiff**<br><br>**Versus**<br><br>**City of New York, N.Y.P.D. and X CORP, et. al.**<br><br>**Defendants** | **JASON GOODMAN's**<br>**PRE-FILING**<br>**RESTRICTION**<br><br>**23-cv-09648-UA** |

**TO ALL PARTIES: ATTACHED IS THE PRE-FILING**
**ORDER ISSUED AGAINST JASON GOODMAN ON 2/22/2022.**

NOW COMES the *pro se* Amicus to file the attached pre-filing order.

Signed November 4, 2023

*D. G. SWEIGERT, C/O*
*AMERICA'S RV MAILBOX, PMB 13339*
*514 Americas Way, Box Elder, SD 57719*

**CERTIFICATE OF SERVICE**

Hereby certified that a PDF copy of this letter has been sent via electronic mail to:

Jason Goodman, truth@crowdsourcethetruth.org

And counsel for X CORP, pshimamoto@willenken.com and ktrujillo-jamison@willenken.com

Certified under penalties of perjury.

Respectfully,      Signed this November 4th, 2023 (11/04/2023)

**D.G. SWEIGERT, AMICUS**

1

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/22/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X

THE NATIONAL ACADEMY OF TELEVISION :
ARTS AND SCIENCES, INC. and ACADEMY :
OF TELEVISION ARTS & SCIENCES, :
                                 :
                    Plaintiffs, :         20-CV-7269 (VEC)
                                   :
          -against- :           ORDER
                                     :
MULTIMEDIA SYSTEM DESIGN, INC. :
d/b/a "CROWDSOURCE THE TRUTH", :
                                   :
                    Defendant. :

----------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

       In late 2020, the National Academy of Television Arts and Sciences and the Academy of Television Arts & Sciences sued Multimedia System Design, Inc., d/b/a Crowdsource the Truth ("MSD") for violating its copyright and trademark on the Emmy statuette and for defamation. *See* Compl., Dkt. 1; *see also* Am. Compl., Dkt. 62. Thus began litigation that has now ended with a default judgment being entered against the Defendant following its failure to hire an attorney to represent it after its initial attorney was relieved. This Order addresses misconduct by the sole shareholder and employee of MSD, Jason Goodman, in connection with this litigation. Mr. Goodman is a conspiracy theorist who has an ongoing feud with D. George Sweigert ("Mr. Sweigert") that plays out, among other places, on the internet and via federal court litigation. *See, e.g.*, *Sweigert v. Goodman*, No. 18-CV-8653 (S.D.N.Y.).

       On December 18, 2020, MSD (represented at the time) and the Plaintiffs stipulated to a Protective Order that provided, *inter alia*: "no person subject to this Order may disclose . . . Confidential Discovery Material to anyone else except as this Order expressly permits." *See* Protective Order, Dkt. 41 at 2. On August 13, 2021, while a motion for sanctions was pending

against MSD, *see* Dkts. 63, 66, MSD's attorney sought to be relieved because he was purportedly afraid of Mr. Sweigert, *see* Dkts. 100, 101. The motion represented that the sole principal of MSD, Mr. Goodman, did not object to the attorney being relieved. The Court granted the attorney's request to be relieved and adjourned *sine die* MSD's time to respond to the outstanding motion for sanctions. *See* Orders, Dkts. 103, 104.

On August 24, 2021, just days after MSD's attorney had been relieved, Plaintiffs notified the Court via a sealed letter that Mr. Goodman had violated the Protective Order. *See* Pls. Ltr., Dkt. 109; *see also* Dkt. 113. Plaintiffs attached to their letter an email string that included (in chronological order): (1) part of an email dated June 4, 2021, from Mr. Sweigert, using the email address spoliation-notice@mailbox.org, to New York State's Attorney Grievance Committee complaining about MSD's attorney; (2) another email from Mr. Sweigert to the Grievance Committee, dated August 16, 2021, purporting to provide background information on the attorney's "disassociation from his client"; (3) an email from Mr. Sweigert dated August 23, 2021, to the New York Attorney General complaining about MSD and Jason Goodman; (4) an email, dated August 23, 2021 at 11:52 a.m., from Jason Goodman "to all recipients of David George Sweigert's malicious email," complaining about Mr. Sweigert and stating, *inter alia*, that Mr. Sweigert caused a "fraudulent email message to be sent to the National Academy of Television Arts and Sciences" from a specified email address (hereafter referred to as "the confidential email address") and that email message caused a lawsuit to be filed against Goodman[1]; (5) an August 23, 2021, responsive email from Larry Klayman (who is an attorney); and (6) an August 23, 2021, response from Mr. Goodman to Mr. Klayman, which was copied to more than thirty email addresses, including Plaintiffs' counsel and the confidential email address.

---

[1] The reference to the lawsuit being filed against Mr. Goodman is apparently a reference to this lawsuit, which, in fact, was filed against MSD, not Mr. Goodman.

*See* Dkt. 109-1; *see also* Dkt. 113 at Ex. A.  In Mr. Goodman's August 23, 2021, response to Mr.

Klayman, Mr. Goodman explained that the goal of his 11:52 a.m. email had been to get the word

out that Mr. Sweigert is "crazy without saying anything that he can allege is defamatory."

Further, Mr. Goodman explained:

> I'm also planting the seed with [Plaintiffs'] lawyers that they're aligned with a crazy
> guy and if they don't unalign themselves it's gonna give me more evidence to show
> that they're working together.  I also sent this to [the confidential email address]
> first time I ever emailed that address.  Let's see if there's any response.  Now that
> I don't have an attorney whatever I do my attorney can't get sanctioned and I'm not
> even Pro Se so they could just yell at me and tell me not to do it again.

Dkt. 109-1 at 1; *see also* Dkt. 113 at Ex. A at 1.  After determining that neither Mr. Goodman

nor MSD were represented by Mr. Klayman, the Court ordered Mr. Goodman to show cause why

he should not be sanctioned for violating the Protective Order.  *See* Order, Dkt. 112.[2]  Mr.

Goodman asserted in his written response, "I did not know the email was subject to the

protection order. . . . I recall [MSD's former attorney] telling me that Plaintiff did something that

put the address into the public domain, but I cannot recall what that was. . . . Any improper

revelation was inadvertent and unintentional."  Response, Dkt. 114.  After receiving Mr.

Goodman's response and the Plaintiffs' reply, Dkt. 117, plus two more submissions from Mr.

Goodman, Dkts. 120, 121, the Court scheduled an evidentiary hearing, Dkt. 122.  The hearing

was held on October 25, 2021.  *See* Oct. 25, 2021 Hearing Tr., Dkt. 129.

Although his written response and the email that triggered this Order implicitly admitted

that he was aware that a Protective Order was in place, at the hearing, Mr. Goodman testified,

incredibly, that he was unsure whether he had known that there was a Protective Order in place

until Plaintiffs notified him in August that he had violated it.  *See id.* at 6:4–17.  Although his

---

[2]     The Court also ordered Plaintiffs to refile their August 24, 2021, letter publicly with the confidential email
address redacted.  *See* Order, Dkt. 112.  Plaintiffs did so on August 26, 2021.  *See* Dkt. 113.

written response stated that he could not recall why he thought the confidential email address was public, at the time of the hearing, Mr. Goodman recalled being told by MSD's former attorney in May 2021 that the confidential email was no longer confidential because it had been spoken aloud during a deposition (which itself had been marked confidential in its entirety, *see id.* at 11:13–15) and Plaintiffs' counsel did not move to strike it from the record, *see id.* at 7:11– 18, 9:7–15, 10:22–11:9, 18:1–6.  At the same time, Mr. Goodman acknowledged that MSD's attorney had told him prior to being relieved that he could not simply email the confidential email address, *see id.* at 9:16–19, 10:22–24, 12:9–11, advice that would make no sense if the attorney had advised Mr. Goodman that it was no longer subject to the Protective Order.[3]

"Sanctions may be authorized by any of a number of rules or statutory provisions, or may be permissible on the basis of the court's inherent powers." *Sakon v. Andreo*, 119 F.3d 109, 113 (2d Cir. 1997).  As relevant here, "district courts have the inherent power" to sanction a party "for bad faith conduct violating the court's orders." *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991) ("[N]either is a federal court forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules.").  A court may impose sanctions under its inherent authority if it finds by "clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009).  "Conduct is entirely

---

[3]     Why the email address is confidential is not entirely clear.  According to Plaintiffs' counsel, it is confidential because it communicated to Plaintiffs through a members-only email portal; thus, exposure of the email address could jeopardize the confidentiality of Plaintiffs' membership.  *See* Oct. 25, 2021 Hearing Tr. at 32:9–33:1. While that argument may or may not have prevailed in the face of a defense request to the Court to remove it from the constraints of the Protective Order, the fact that Plaintiffs designated the email address as confidential has fueled Mr. Goodman's suspicion that his nemesis, Mr. Sweigert, used that email address to foment this litigation and that Plaintiffs are wrongfully trying to hide their association with him.  *See id.* at 9:22–23, 16:1–9, 24:1–7, 41:16-42:10. The provenance of the email address and its role *vel non* in the genesis of this litigation are irrelevant to whether Mr. Goodman violated the Protective Order.

without color when it lacks any legal or factual basis." *Id.*; *see also Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 55 (2d Cir. 2018) ("A court may infer bad faith when a party undertakes frivolous actions that are 'completely without merit.'") (citation omitted).

Applying this standard, a sanction for Mr. Goodman's violation of the Protective Order is appropriate. The Protective Order was clear and unambiguous that "no person subject to this Order may disclose . . . Confidential Discovery Material to anyone else except as this Order expressly permits." *See* Dkt. 41 at 2. It is obvious from the face of Mr. Goodman's August 23, 2021 email that Mr. Goodman was well aware that the confidential email address was confidential. If he were not aware of that fact (that is, if his testimony at the hearing were truthful that he thought the email address was no longer confidential), his statement in the August 23, 2021 email — which he accidentally copied to a group of many people (including Plaintiffs' counsel)[4] — that his attorney "can't get sanctioned" for using and disclosing the confidential email address would make no sense. Accordingly, it is simply not plausible that Mr. Goodman misunderstood the situation. *See Petrisch v. JP Morgan Chase*, 789 F. Supp. 2d 437, 455 (S.D.N.Y. 2011); *see also Roberts v. Bennaceur*, 658 F. App'x 611, 615 (2d Cir. 2016) (summary order) (imposing sanctions based on numerous "misrepresentations" and "inadequate explanations" that demonstrated "bad faith throughout these proceedings") (citation omitted). Rather, Mr. Goodman's violation of the Protective Order was done willfully, with no legitimate purpose, to satisfy Mr. Goodman's desire to prove that Mr. Sweigert was behind the confidential

---

[4]     The Court can take judicial notice that the practice of hitting "reply all" on emails not infrequently results in emails being inadvertently sent to many recipients. The evidence that Mr. Goodman sent the email in question to the copyees inadvertently is that he promptly called Plaintiffs' counsel, asked her to delete the email, and characterized the email as having been sent inadvertently. *See* Dkt. 113 at Ex. B; *see also* Oct. 25, 2021 Hearing Tr. at 43:7–9 ("At the time I composed [the August 23, 2021, email] I understood it was a statement being made to private, to a friend[.] [T]hat [*i.e.*, sending it to many recipients] was inadvertent.").

email address.[5]  For all of these reasons, the Court concludes that Mr. Goodman willfully

violated the terms of the Protective Order and disregarded the authority of the Court.

The Court has considered what an appropriate sanction would be.  *See Macolor v.*

*Libiran*, No. 14-CV-4555, 2015 WL 1267337, at *5 (S.D.N.Y. Mar. 18, 2015) (sanctions must

be "no more severe than reasonably necessary to deter repetition" of the misconduct "or

comparable conduct by similarly situated persons") (cleaned up).  By Order entered today, the

underlying lawsuit has been terminated with a default judgment against MSD.  Nevertheless,

given Mr. Goodman's propensity to become involved in litigation on both sides of the versus

sign, the Court finds that an appropriate sanction is to require Mr. Goodman, for the next two

years, to notify all other Courts in which he litigates and all other parties against whom or with

whom he litigates that a Court has determined that he willfully violated a Protective Order during

litigation.  *See, e.g.*, *Gallop v. Cheney*, 667 F.3d 226, 230 (2d Cir. 2012) (requiring sanctioned

counsel "for a period of one year from the date of entry of this order, to provide notice of the

sanctions imposed upon him in this case . . . to any federal court in this Circuit before which he

appears or seeks to appear").  To accomplish this, Mr. Goodman must, until **February 22, 2024**,

file a copy of this Order in every lawsuit in which he or any company in which he is a majority

shareholder is a party.  This Order applies whether the lawsuit is in state court or federal court

and whether Mr. Goodman or his company is represented or *pro se.*  Should he fail to do so, that

would be a contempt of this Court's Order and would be punished accordingly.

Mr. Goodman must file a certification, under penalty of perjury, with this Court, not later

than **March 22, 2022**, listing all cases in which he is engaged as of that date, and affirming that

this Order has been filed in each case.  Thereafter, on the one-year anniversary of this Order,

---

[5]      Whether it was Mr. Sweigert who notified Plaintiffs of the misuse of the Emmy statuette is, of course, not
relevant to whether MSD's actions violated Plaintiffs' intellectual property rights.

until and including 2024, Mr. Goodman must file a similar certification, under penalty of perjury, listing all cases in which he has been engaged since the prior certification, and affirming that the Order was filed in all of the cases.

The Clerk of Court is respectfully directed to mail a copy of this Order to Jason Goodman at: 252 7th Avenue #6s, New York, NY 10001.

**SO ORDERED.**

**Date: February 22, 2022**
      **New York, NY**

                                   **VALERIE CAPRONI**
                               **United States District Judge**